OPINION
{¶ 1} E.S., appellant, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, in which the court granted the motion of Franklin County Children Services ("FCCS"), appellee, for permanent court commitment ("PCC").
 {¶ 2} G.S., III, was born on October 9, 2002, and is the son of appellant and father. S.S. was born August 26, 2004, and is the daughter of appellant and father. Appellant and father have a total of six children together, and appellant has three additional children. Prior to G.S.'s birth, appellant's and father's parental rights were terminated with respect to their four other children, and appellant's parental rights were terminated with respect to two of her other children, with appellant's remaining child being placed in the custody of a relative after his birth. The current case involving G.S. and S.S. was opened after a domestic violence incident involving appellant and father, which occurred in June 2003, while G.S. was sleeping in the home. Father punched appellant in the face several times with a closed fist and pushed her down the stairs. Father was later convicted of domestic violence and placed on probation. Following the incident, G.S. was placed in the temporary custody of FCCS. S.S. was placed in the temporary custody of FCCS immediately after her birth. Although the record is not abundantly clear, apparently an initial complaint for dependency with regard to the children was filed and was subsequently dismissed. On December 30, 2004, FCCS filed a complaint in the present case, requesting that the children be found dependent and that FCCS be granted permanent custody. On January 3, 2005, temporary custody of the children was granted to FCCS.
 {¶ 3} A hearing on FCCS's complaint was held before a magistrate over several days, and father failed to appear for any of the hearings. At the conclusion of the hearing, the magistrate found the children to be dependent and then proceeded directly to disposition, ordering permanent custody be granted to FCCS. On April 20, 2005, the magistrate issued a decision and, on June 2, 2005, an amended decision was filed, which included the magistrate's written findings. Appellant filed objections to the magistrate's decision. On November 18, 2005, the court overruled appellant's objections. Appellant appeals the judgment of the trial court, asserting the following assignment of error:
THE COURT ERRED WHEN IT FOUND THAT THE CHILDREN WERE DEPENDENT BY CLEAR AND CONVINCING EVIDENCE. THIS FINDING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 4} Appellant's sole argument in her assignment of error is that the trial court's decision that the children were dependent was against the manifest weight of the evidence and not supported by clear and convincing evidence. A finding of dependency must focus upon the conditions surrounding the child and whether the child is receiving proper care, rather than any faults exhibited by the parents. In re Bibb (1980), 70 Ohio App.2d 117. A finding of dependency also must be established by clear and convincing evidence. R.C. 2151.35(A). Clear and convincing evidence is that measure or degree of proof which is more than a mere preponderance of the evidence, but does not reach the extent of the certainty required to establish "beyond a reasonable doubt" in criminal cases. It is that quantum of evidence which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v.Ledford (1954), 161 Ohio St. 469. Further, judgments supported by some competent, credible evidence going to all essential elements of the case are not against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, paragraph one of the syllabus. When reviewing a trial court's decision on a manifest weight of the evidence basis, we are guided by the presumption that the findings of the trial court were correct, and reversing a judgment on manifest weight grounds should only be done in exceptional circumstances, when the evidence weighs heavily against the judgment. State v.Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The rationale for this presumption is that the trial court is in the best position to evaluate the evidence by viewing witnesses and observing their demeanor, voice inflections, and gestures. Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77.
 {¶ 5} In the present case, the trial court found there existed clear and convincing evidence that G.S. and S.S. were dependent children as defined by R.C. 2151.04(D), which provides that a "dependent child" is one:
(D) To whom both of the following apply:
(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.
(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household.
 {¶ 6} After a review of the record in the present case, we find the evidence supports the trial court's finding of dependency. With regard to R.C. 2151.04(D)(1), G.S. was residing in a household in which both parents had committed an act that was the basis for an adjudication that G.S.'s siblings were abused, neglected, and dependent children. Specifically, Jennifer Palla, the parents' caseworker in March 2001, testified that one of the parents' other children, X.S., was removed from the parents' home by FCCS when she was three months old due to the parents' domestic violence and alcohol abuse, which were the same reasons G.S. and S.S. were removed in the present case. X.S. was found to be dependent, and FCCS was granted permanent custody of her in December 2001. The record from the present hearing also included several other judgments with regard to the neglect/dependency adjudications and PCC dispositions of several of the parties' other children, as well as appellant's children fathered by other men. Therefore, R.C. 2151.04(D)(1) was satisfied.
 {¶ 7} With regard to R.C. 2151.04(D)(2), we also find there was clear and convincing evidence that, because of the circumstances surrounding the neglect or dependency of the children's siblings and the other conditions in the household, G.S. and S.S. were in danger of being neglected and dependent. Appellant contends that the case was opened based upon only one incident of domestic violence, during which G.S. was asleep. She maintains there is no evidence as to any subsequent acts of domestic violence, and she and father are no longer involved in a relationship. However, the domestic violence incident at issue was not minor. It is undisputed that appellant suffered extensive injuries as a result of the one reported incident of domestic violence. Police Officer Kevin Yankovich testified that, when he responded to the domestic violence call, he found appellant bloody and "pretty beaten up." Yankovich found broken objects inside the apartment, and appellant told him that father had been drinking, punched her several times in the face with a closed fist, and threw her down the stairs. She also told Yankovich that father abused her four or five times per month, although she later testified she never said this to the officer. However, appellant admitted in her testimony that father has assaulted her on several occasions and injured her face.
 {¶ 8} In addition, there was evidence that the parents still had an ongoing relationship. Although they claimed to be living separately, they remain married. Appellant admitted that father had stayed with her "a little while," and the two had been living together "on and off" just three to four months before trial. They still talk on the phone and had talked on the phone prior to her testimony at trial. Also, Carrie Brothers, the parents' present caseworker, testified that she believed the parents were still consistently together and had a relationship, citing occasions when father would call Brothers from appellant's phone number. Brothers also stated appellant told her that father was at her house a lot and appellant spoke on behalf of father at his criminal hearing so he would not get a serious penalty. Thus, clear and convincing evidence suggests the parties still have some level of relationship and interaction, which in the past has led inevitably to alcohol usage and domestic violence, causing the removal of the children from their custody.
 {¶ 9} Further, appellant admitted that she had only begun a domestic violence program, CHOICES, a few weeks before trial and had not undergone any drug or alcohol counseling. She also stated she had to start the program over because she missed an appointment. Brothers testified that father never completed his drug and alcohol assessment so he could begin domestic violence counseling. Given Palla testified that domestic violence and substance abuse were the same problems that caused the removal of the parties' other children, it is apparent that neither appellant nor father has shown consistent commitment to change the circumstances that formed the basis of the neglect/dependency findings regarding G.S.'s and S.S.'s siblings.
 {¶ 10} Also, Palla testified that, with regard to X.S., the most recent of the children's siblings to be permanently committed to the custody of FCCS, FCCS was concerned about home environment and economic stability. These issues were never resolved and continued to impact G.S. and S.S. Appellant's testimony as to her employment was confusing. Although she indicated she earned five or six "grand" per month, further statements seemed to indicate that by "grand," she may have meant "hundred." Further, her employment at a bar appeared very sporadic, as did her employment for a temporary employment agency. Other testimony indicated that she made about $5,000 per year. She also gave odd testimony about being a childhood star and recently releasing a music CD, for which she claimed to receive royalties, although there was no supporting evidence of such submitted. She also claimed to be a "Gerber baby" whose pictures were used in promotions, and she said she was seeking an attorney to sue for royalties for the unauthorized use of her elementary school photographs that are now being used in magazine advertisements. At the time of the hearing, she indicated she was living in a residence that was formerly condemned and that a murder had taken place there. Because the owner had never informed her of the murder, she threatened to sue him. He thereafter allowed her to stay there rent free. If true, her housing situation would appear unstable. Further, appellant indicated that she often gets her meals from food pantries, thereby raising doubts about her ability to feed the children. Indeed, Brothers testified that G.S. was underweight when he first entered into placement, and she opined that appellant could not meet the children's needs for clothing, housing or food. Thus, the record demonstrates that the same economic and home environment issues that imperiled G.S.'s and S.S.'s siblings are putting G.S. and S.S. in danger as well. Based upon this clear and convincing evidence, R.C. 2151.04(D)(2) was also satisfied, and, thus, the trial court's finding that G.S. and S.S. were dependent children was not against the manifest weight of the evidence.
 {¶ 11} Pursuant to R.C. 2151.353(A)(4), after finding a child dependent, the court has the dispositional option to commit the child to the permanent custody of a public children services agency. A court may grant PCC to the children services agency if it determines in accordance with R.C. 2151.414(E) that: (1) the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent, and (2) permanent commitment is in the best interest of the child under R.C. 2151.414. In the present appeal, appellant's assignment of error addresses only the trial court's dependency finding, and her argument only incidentally refers to the dispositional aspects of the hearing. However, we glean from appellant's arguments that she believes the trial court erred in granting permanent custody because she had been working on a case plan, completed a domestic violence assessment, completed a drug and alcohol assessment, enrolled herself in CHOICES, visited with the children on a "reasonably" regular basis, and demonstrated proper parenting skills and interaction with the children during the visits.
 {¶ 12} In making a determination as to whether a child cannot or should not be placed with the parents, FCCS must establish one of the factors in R.C. 2151.414(E). Here, the trial court found FCCS had established appellant has had parental rights involuntarily terminated with respect to a sibling of the children. See R.C. 2151.414(E)(11). There is no dispute that this factor was established. Having found one of the factors in R.C.2151.414(E) existed, the trial court was then required to determine whether permanent custody was in the best interest of the children, pursuant to R.C. 2151.414(D). R.C. 2151.414(D) provides that, in determining the best interest of the child, the court must consider all relevant factors, including, but not limited to the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child. The factors set forth in R.C.2151.414(E)(7) through (11) include: (1) whether the parents have been convicted of or pled guilty to various crimes; (2) whether medical treatment or food has been withheld from the child; (3) whether the parent has placed the child at a substantial risk of harm due to alcohol or drug abuse; (4) whether the parent has abandoned the child; and (5) whether the parent has had parental rights terminated with respect to a sibling of the child.
 {¶ 13} Although appellant here does not specifically address the best interest factors, the magistrate's decision indicates it considered the necessary factors. See In re C.C., Franklin App. No. 04AP-883, 2005-Ohio-5163, at ¶ 53 (must be apparent the trial court considered the best interest factors). Our own review of the record supports the magistrate's findings. With respect to R.C. 2151.414(D)(1), Brothers testified that appellant had appropriate interactions with G.S. and S.S. during visitations. Although there was little testimony with regard to the children's interactions with their foster parents, there was testimony that G.S. and S.S. interacted well with each other and the other siblings who were also under the care of the same foster parents.
 {¶ 14} However, the main issue, as indicated by the magistrate, is that the interactions between the children at issue and appellant and father were very limited. Visitation problems have persisted throughout the case, with appellant and father both consistently arriving late or not at all, resulting in cancelled visits and suspension of visitation. Brothers testified that appellant missed 24 of the 78 visits scheduled, and father missed many more, despite the fact that the parties had been offered free bus passes and taxi transportation. Appellant testified that father quit going to visitations with the children because he had outstanding warrants and feared arrest. The parties' frequent failures to attend visitations demonstrate a lack of concern for the children. See, e.g., In reS.C., Lorain App. No. 04CA008469, 2004-Ohio-4570, at ¶ 36; Inre T.P., Montgomery App. No. 20604, 2004-Ohio-5835, at ¶ 40-42.
 {¶ 15} As for the remaining factors, the children are too young to express their wishes, as contemplated by R.C.2151.414(D)(2). However, their guardian ad litem recommended that permanent custody be granted to FCCS. With regard to the children's custodial history under R.C. 2151.414(D)(3), G.S. was removed from the parents' home at approximately 9 months old, and S.S. was placed in foster care directly from the hospital after being born. Thus, both children have been in foster care most of their lives. As to the need for a legally secure placement under R.C. 2151.414(D)(4), the record reveals that neither party has completed their case plans. Although Brothers testified that appellant completed assessments for drug and alcohol treatment and domestic violence counseling, appellant has not completed the recommended counseling. She did start domestic violence counseling, but she was terminated from the program for missing a session. See, e.g., In re Carr, Stark App. No. 2004-CA-00256,2004-Ohio-6144 (mother did not comply with the case plan, as she failed to follow up with counseling). Father was also ordered to complete drug, alcohol, and domestic violence counseling as part of his probation for the domestic violence conviction, but he failed to complete such, which resulted in a probation violation and a warrant being issued for his arrest. Failure to complete significant aspects of a case plan, despite opportunities to do so, is grounds for terminating parental rights. See In reBrofford (1992), 83 Ohio App.3d 869 (non-compliance with a case plan is a ground for termination of parental rights); In reM.L.J., Franklin App. No. 04AP-152, 2004-Ohio-4358 (same). Further, there are no relatives that are suitable to take custody of the children, and no parties petitioned the court for custody of the children. Thus, there is a need for legally secure placement. As to R.C. 2151.414(D)(5), it is undisputed that appellant has had her parental rights terminated with respect to several of G.S.'s and S.S.'s siblings, and documentation was presented at the hearing with regard to five of their siblings. Based upon this evidence, we find the trial court did not err in finding it was in the best interest of G.S. and S.S. that permanent custody be granted to FCCS.
 {¶ 16} For the above reasons, the trial court's decision finding G.S. and S.S. dependent children and granting permanent custody to FCCS was not against the manifest weight of the evidence. Therefore, appellant's assignment of error is overruled.
 {¶ 17} Accordingly, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
Klatt, P.J., and Travis, J., concur.