[Cite as *Blessing v. Blessing*, 2019-Ohio-3951.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| CLYDE W. BLESSING, | : | |
| Appellant, | : | CASE NO. CA2019-01-011 |
| | : | O P I N I O N |
| - vs - | | 9/30/2019 |
| | : | |
| RACHEL PARKER BLESSING, | : | |
| Appellee. | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2016DRA00480

Andrew G. Ice, 4030 Mt. Carmel Tobasco Road, Suite 127, Cincinnati, Ohio 45255, for appellant

W. Kenneth Zuk, 3487 Saint Annes Turn, Cincinnati, Ohio 45245, for appellee

**S. POWELL, J.**

{¶ 1} Appellant, Clyde W. Blessing ("Father"), appeals the decision of the Clermont County Court of Common Pleas, Domestic Relations Division, modifying a shared parenting plan by designating appellee, Rachel Parker Blessing ("Mother"), the residential parent and legal custodian of their two children. For the reasons outlined below, we affirm the domestic relations court's decision.

{¶ 2} On April 21, 2017, Mother and Father were divorced. There were two children born issue of the marriage, one born on June 8, 2011 and the other born on December 18, 2012. Father is unemployed and subsists on benefits he receives from Social Security Disability due to Father being diagnosed with seizures. Mother is a partner with her fiancé in a lawn care business. Mother and Father live in the same trailer park approximately 100 feet apart.

{¶ 3} Following their divorce, Mother and Father were parties to a shared parenting plan. As part of this shared parenting plan, Mother and Father agreed to create and share an online calendar setting forth their respective parenting time schedules. This online calendar was also to be used by Mother and Father to coordinate the children's medical appointments. The shared parenting plan further required Mother and Father to offer the other additional parenting time with the children if either of them was going to be away from the children during his or her respective parenting time for a period of more than a four hours.

{¶ 4} On April 20, 2018, Father moved the domestic relations court to terminate the shared parenting plan. Shortly thereafter, on June 8, 2018, Mother also moved the domestic relations court to terminate the shared parenting plan. To resolve this custody dispute, the domestic relations court held a two-day hearing on the matter. During this hearing, the domestic relations court heard testimony from just Mother and Father.

{¶ 5} Father testified and detailed his purported struggles to communicate with Mother through their shared online calendar, text message, and e-mail. Father also testified that he believed Mother had neglected her duties regarding the children's medical appointments, schooling, and extracurricular activities. According to Father, this includes Mother not taking the children to counseling or their dentist appointments. Father further alleged that Mother had routinely neglected to have the children finish their schoolwork.

Therefore, as Father testified, he should be designated the children's residential parent and legal custodian because he is better equipped to fulfill the children's needs and because he "stick[s] to the schedule."

{¶ 6} Mother, on the other hand, testified that she stopped communicating with Father through their online calendar because she was not comfortable with Father having complete and total access to her schedule. This was due, in part, to the fact that Father had disclosed her and the children's schedules to his family. Father had also gone into Mother's home uninvited when she was not there "and showing up because he knew my schedule[.]"

{¶ 7} Mother further testified that she was often unable to respond to Father's numerous text messages and e-mails due to her work schedule and responsibilities as a partner in a lawn care business. This included times when Mother was not able to immediately respond to Father because she did not have her phone with her, did not feel it was safe to respond to Father while driving a lawn mower, or did not hear her phone because of "the noise covers up anything that [her phone] might make."

{¶ 8} Mother additionally testified that although she had made mistakes in the past, she was now doing everything in her power to ensure the children had what they needed. This includes remodeling her mobile home so that the children had their own bedroom. Therefore, according to Mother, she should be designated the children's residential parent and legal custodian due to, among other reasons, Father's "constant and confusing and aggressive communication."

{¶ 9} On January 3, 2019, the domestic relations court issued a decision terminating the parties' shared parenting plan by designating Mother the residential parent and legal custodian of their two children. In so holding, the domestic relations court noted that it had given "due consideration to the testimony and evidence as to each parent," as

well as their "ability to provide the better home and environment for [the children] as their residential parent." The domestic relations court also noted that, upon giving due consideration to the testimony and evidence presented, it was apparent that Father exhibits a need to be in control "and to do things a certain way, i.e. 'his' way." This was based on the voluminous number of text messages and e-mails Father sent to Mother, the fact that Father scheduled medical appointments for the children during Mother's parenting time, as well as Father's "misuse" and dissemination of his and Mother's online calendar "beyond what was intended."[1] This dissemination, as the domestic relations court found, legitimized Mother's "concerns as to privacy/safety issues" for herself, the children, and her lawn care business.

{¶ 10} Father now appeals the domestic relations court's decision, raising the following single assignment of error for review.

{¶ 11} THE TRIAL COURT ERRED AS A MATTER OF LAW IN ARRIVING AT FINAL JUDGMENT DESIGNATING THE APPELLEE AS THE RESIDENTIAL PARENT AND LEGAL CUSTODIAN OF THE MINOR CHILDREN AS SAID JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 12} In his assignment of error, Father argues the domestic relations court's decision finding it was in the children's best interest to designate Mother the residential parent and legal custodian was an abuse of discretion in that it was against the manifest weight of the evidence.[2] We disagree.

---

1. Father submitted several exhibits that contained text messages and e-mails exchanged between him and Mother, many of which occurred on the same day and in rapid succession. These exhibits span, at a minimum, several hundred pages and likely contain over a thousand different messages exchanged between the parties.

2. Considering both Father and Mother moved to terminate their shared parenting plan, Father does not challenge the domestic relations court's decision to terminate shared parenting. *See Manis v. Manis*, 12th Dist. Warren No. CA2014-05-070, 2014-Ohio-5086, ¶ 14 (the domestic relations court may terminate a shared parenting plan "simply upon the request of one or both of the parents").

{¶ 13} An appellate court reviews a lower court's custody determination for an abuse of discretion. *In re S.K.*, 12th Dist. Butler No. CA2013-06-108, 2014-Ohio-563, ¶ 12. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *In re B.K.*, 12th Dist. Butler No. CA2010-12-324, 2011-Ohio-4470, ¶ 12, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). The discretion that a lower court enjoys in custody matters "'should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'" *In re J.M.*, 12th Dist. Warren No. CA2008-12-148, 2009-Ohio-4824, ¶ 17, quoting *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). "[A]n appellate court affords deference to a judge or magistrate's findings regarding witnesses' credibility." *In re D.R.*, 12th Dist. Butler Nos. CA2005-06-150 and CA2005-06-151, 2006-Ohio-340, ¶ 12.

{¶ 14} As noted above, Father argues the domestic relations court's decision designating Mother the children's residential parent and legal custodian was against the manifest weight of the evidence. A manifest weight of the evidence challenge concerns "'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "In reviewing the manifest weight of the evidence, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Brown v. Brown*, 12th Dist. Clermont No. CA2018-08-064, 2019-Ohio-2164, ¶ 30, citing *Eastley* at ¶ 20. "[R]eversing a judgment on manifest weight grounds should only be done in exceptional circumstances, when the evidence weighs heavily against the judgment." *Jones v. Wall*, 12th Dist. Warren No. CA2015-10-088, 2016-Ohio-

2780, ¶ 14, citing *In re G.S.*, 10th Dist. Franklin No. 05AP-1321, 2006-Ohio-2530, ¶ 4.

{¶ 15} Pursuant to R.C. 3109.04(E)(2)(d), upon terminating a shared parenting plan, the domestic relations court shall issue a modified decree for the allocation of parental rights and responsibilities as if no shared parenting plan had ever been granted and as if no request for shared parenting had ever been made. *Thompson v. Cannon*, 12th Dist. Fayette No. CA2015-02-003, 2015-Ohio-2893, ¶ 19. The domestic relations court must then "designate one parent the residential parent and legal custodian of the child[ren] 'in a manner consistent with the best interest of the children.'" *Harmon v. Radcliff*, 12th Dist. CA2017-04-047, 2017-Ohio-8682, ¶ 42, quoting R.C. 3109.04(A)(1).

{¶ 16} To determine the best interest of the children, R.C. 3109.04(F)(1) requires the domestic relations court to consider all relevant factors. *In re X.B.*, 12th Dist. Butler No. CA2014-07-168, 2015-Ohio-1174, ¶ 19. The best interest factors are set forth in R.C. 3109.04(F)(1)(a) thru (j). These best interest factors include, but are not limited to, the following:

> (1) the wishes of the parents;
>
> (2) the children's wishes, as expressed to the court in chambers;
>
> (3) the children's interactions and interrelationships with parents, siblings, and other persons who may significantly affect the children's best interests;
>
> (4) the children's adjustment to home, school, and community;
>
> (5) the mental and physical health of all persons involved in the situation;
>
> (6) the parent more likely to honor and facilitate visitation;
>
> (7) whether one parent has denied the other of parenting time;
>
> (8) whether child support orders have been followed; and
>
> (9) whether either parent has established or is planning to establish a residence outside of Ohio.

"[N]o single factor is determinative of the best interest of a child; rather, the determination should be made in light of the totality of the circumstances." *Suess v. Suess*, 12th Dist. Warren Nos. CA96-01-006 and CA96-01-008, 1996 Ohio App. LEXIS 4400, *6 (Oct. 7, 1996).

{¶ 17} Instead of arguing the domestic relations court committed some substantive or procedural error, Father merely argues the domestic relations court "just got it wrong" when designating Mother the children's residential parent and legal custodian. Father supports this claim by selectively highlighting the testimony and evidence he believes tips the scale in his favor. However, while it is clear that Father disagrees with the domestic relations court's decision, Father's argument serves as nothing more than a challenge to how much weight the domestic relations court should have given to each of the best interest factors outlined above. But, rather than this court on appeal, "[i]t is the role of the [domestic relations] court to determine the relative weight to assign each factor, in relation to the others, when determining the children's best interest." *Ruble v. Ruble*, 12th Dist. Madison No. CA2010-09-019, 2011-Ohio-3350, ¶ 18. That is to say it is the domestic relations court, not this court, who is "entitled to consider this evidence and determine the relative weight to assign to it in examining the best interest factors." *Harmon v. Radcliff*, 2017-Ohio-8682 at ¶ 48.

{¶ 18} "This court should not, and will not, second-guess the domestic relations court's decision in regard to the appropriate weight to be given to any one of those factors." *Mack v. Mack*, 12th Dist. Butler No. CA2018-09-179, 2019-Ohio-2379, ¶ 33, citing *In re A.B.*, 12th Dist. Butler No. CA2009-10-257, 2010-Ohio-2823, ¶ 35; and *Albert v. Albert*, 2d Dist. Montgomery No. 24000, 2010-Ohio-6112, ¶ 32 ("[w]e defer to the trial court's determinations of the parties' credibility and of the appropriate weight to be given to the

statutory factors"). This is because, as noted above, the discretion that a lower court enjoys in custody matters "'should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'" *In re J.M.*, 2009-Ohio-4824 at ¶ 17, quoting *Miller*, 37 Ohio St.3d at 74.

{¶ 19} Because this is not one of those exceptional cases where the domestic relations court clearly lost its way so as to create a manifest miscarriage of justice, the domestic relations court's decision finding it was in the children's best interest to designate Mother as the children's residential parent and legal custodian was neither an abuse of discretion nor against the manifest weight of the evidence. This holds true despite what Father may himself believe is in the best interest of the children. It is the best interest of the children, not a parent's preferred outcome, that is controlling. *In re K.M.*, 12th Dist. Butler No. CA2019-01-015, 2019-Ohio-1833, ¶ 67. Therefore, finding no merit to any of the arguments raised by Father herein, Father's single assignment of error lacks merit and is overruled.

{¶ 20} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.