[Cite as *In re M.A.G.*, 2023-Ohio-1756.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| M.A.G., | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| DOB: 09/08/2014 | : | |
| | : | |
| | : | Case No. 2022 CA 0032 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Fairfield County
Court of Common Pleas, Domestic
Relations Division, Case No. 2015-
PA-0006

JUDGMENT: Affirmed

DATE OF JUDGMENT: May 24, 2023

APPEARANCES:

For Plaintiff-Appellant J.G.                    For Defendant-Appellee M.F.

MICHAEL R. BASSETT                          LANCE R. GROVE
127 W. Perry Streetm Suite 203              6810 E. Main Street, Suite 302
Port Clinton, Ohio 43452                       Reynoldsburg, Ohio 43068

*Baldwin, J.*

**{¶1}** Appellant appeals the trial court's decision to designate appellee that residential parent and legal custodian of the parties' minor child.

### STATEMENT OF THE FACTS AND THE CASE

**{¶2}** M.G. was born on September 8, 2014 to appellant J.G. ("appellant"). A paternity test was subsequently conducted, the results of which established that appellee M.F. ("appellee") was M.G.'s biological father. On January 12, 2015, the appellant filed a complaint to establish paternity, and an administrative order signed by both parties was issued naming the appellee as M.G.'s father and ordering him to pay child support to the appellant. The administrative order did not, however, allocate parental rights and responsibilities.

**{¶3}** On April 11, 2018, the appellee filed a motion for allocation of parental rights and responsibilities seeking custody of M.G. or, in the alternative, shared parenting. On May 11, 2018, he filed a motion for temporary orders for parenting time, which was set for hearing on June 25, 2018.

**{¶4}** The parties reached an agreement on June 25, 2018 in which the appellee would have two supervised visits at his parents' home, and thereafter would have Local Rule parenting time to be exercised at his parents' home. In addition, the appellee could exercise mid-week visitation with 24-hour notice, the location of which was not ordered. Finally, the parties moved for the appointment of a Guardian Ad Litem ("GAL"). On July 11, 2018 the trial court issued an order appointing the GAL, and on August 6, 2018 the Magistrate issued an Order documenting parties' agreement regarding visitation.

**{¶5}** The GAL filed a motion for immediate drug testing, which was granted. In addition, the GAL reviewed the pleadings and discussed the matter with the parties' respective counsel. The GAL then conducted an inspection of the appellee's home and determined that it was appropriate for unsupervised parenting time. The appellant was opposed to unsupervised parenting time, and on August 20, 2018 filed a motion to remove and replace the GAL, alleging bias. The trial court scheduled the motion for a non-oral hearing on October 10, 2018.

**{¶6}** The GAL submitted a memorandum contra to the appellant's motion on October 9, 2018 in which she asserted that, based upon her review of the file and her communications with the parties and their counsel, it was her understanding that the appellant's main concerns were the safety of the appellee's home and his criminal history and, because counsel for the parties were unable to reach an agreement on those issues for purposes of the temporary orders, they asked her to "weigh in." She told the parties that she did not have concerns regarding the safety of the appellee's home, or regarding his criminal history as related to M.G., and believed unsupervised Local Rule 17 parenting time was appropriate. The trial court found that the GAL's position was not unreasonable, and denied the motion to remove and replace. Parenting time as set forth in the trial court's June 25, 2018 order was continued.

**{¶7}** On December 21, 2018, the appellee filed a motion for contempt against the appellant for refusing to make M.G. available for court ordered parenting time on multiple occasions, and for withholding telephone and FaceTime contact between M.G. and the appellee. In addition, the appellant failed to respond to requests for admissions, and as a result the following was deemed admitted: the appellee was not in any way a

threat to the well-being, health, or safety of M.G.; the appellant paid money to her older daughter to lie to the GAL about the appellee; the appellant physically assaulted the appellee within the past six years from the date of the admissions; the appellee is a good and loving father in regard to M.G.; M.G. loves the appellee; the appellant denied the appellee's weekday parenting on two occasions; the appellant denied telephone contact between M.G. and the appellee; the appellant instructed M.G to call other men "Dad" or "Father"; and, the appellant denied weekend parenting time to the appellee on two occasions.

**{¶8}** On October 1, 2019, the appellant reported to the GAL, for the first time, that the appellee had allegedly abused M.G. eight months prior. The allegations had not been reported to the GAL earlier, and were not reported to child protective services until November 6, 2019. On December 26, 2019, the magistrate granted the appellee temporary, unsupervised parenting time pursuant to local rule. The appellant promptly moved for modification, seeking an order that the appellee's parenting time be supervised. On February 6, 2020, appellant contacted the police and alleged that the appellee had physically abused M.G., and the police contacted child protective services. The appellant continued to withhold parenting time from the appellee in contravention of court order.

**{¶9}** On February 13, 2020, the GAL filed a motion for an emergency ex parte custody order alleging emotional maltreatment and abuse of M.G. by the appellant. The GAL argued that emergency custody should be granted to the appellee because the appellant withheld parenting time from the appellee and continued to allege in M.G.'s presence that the appellee physically abused M.G., putting M.G. at risk of emotional

maltreatment and abuse. The Magistrate granted the motion on February 13, 2020, and emergency custody was awarded to the appellee. Further, the Magistrate issued a no contact order between appellant and M.G. On February 26, 2020, the Magistrate issued a continuing order maintaining the appellee's emergency custody of M.G.

{¶10} The GAL moved for the appointment of a parenting coordinator on May 11, 2020, which the trial court granted on June 14, 2020. The appellant thereafter filed various motions, including a motion to terminate the parenting coordinator and a motion to modify the temporary emergency orders. The Magistrate reaffirmed the appointment of the parenting coordinator. On April 30, 2021, the GAL submitted an updated report in which she recommended that the appellee remain the custodial parent and that the appellant have supervised parenting time.

{¶11} A final hearing took place on May 3, 4, and 5, 2021, and November 22, 2021, before the Magistrate on the following: the appellee's motion for allocation of parental rights and responsibilities; the appellee's motion for a ruling of contempt against the appellant; the GAL's motion for contempt and other relief upon appellant; and, the GAL's motion for contempt and other relief upon appellee. The court heard testimony from Heather Stoneburner of the Fairfield County Protective Services; the appellee's mother; Paul Dalton, a co-worker and friend of the appellee; the appellee; the appellant; the appellee's longtime friend and, at the time, girlfriend; Dr. Amy Belcastro-Andrews, the appellant's counselor; Michael Ramsey, the appellant's former boyfriend; Dr. Amy Armstrong, the parenting coordinator; Officer Nathan Fries of the Pickerington Police Department; Tara Randall, a former acquaintance of the appellant; K.G., the appellant's daughter and M.G.'s half-sister; and, Kathryn Cornelius-Blume, the GAL. In addition, over

fifty exhibits were admitted. The Magistrate heard the testimony, reviewed the exhibits, and on January 3, 2022 issued a decision in which she, inter alia, designated the appellee M.G.'s residential parent and legal custodian. The appellant thereafter filed timely objections to the Magistrate's Decision.

{¶12} The trial court, stating that the case had had significant delays due in part to COVID and in part to the fact that the appellant had retained the services of five separate attorneys resulting in continuances, issued a sixty-four (64) page judgment entry on July 13, 2022 in which it made detailed findings on the case history and custody, parenting time of the non-residential parent, child support, tax exemptions, contempts, and other items. The trial court found, inter alia, that the crux of the case was the appellant's unwillingness to acknowledge that M.G. should have a relationship with the appellee, and whether the appellant had endangered M.G.'s mental health and emotional health with her efforts to keep appellee and M.G. apart.  Indeed, the record reveals that the appellant denied the appellee's parenting time on thirty-four (34) occasions.

{¶13} After reviewing all of the evidence adduced during the four day trial, the trial court ordered that appellee shall be M.G.'s residential parent and legal custodian; that the appellant shall have supervised parenting time not less than one time per week as scheduled through a visitation center; that the appellant may have FaceTime calls with M.G. at least one time per week, and more by agreement of the parties; and, that the appellant may send M.G. gifts, cards, or family pictures, and the appellee shall ensure that M.G. receives said items so long as they are appropriate. The trial court ordered further that neither party shall disparage the other or speak negatively about other in the presence of M.G., and shall not allow others to do so.

{¶14} The appellant has appealed, setting forth the following four assignments of error:

{¶15} "1. THE TRIAL COURT FAILED TO MAKE THE STATUTORILY REQUIRED FINDINGS IN AWARDING CUSTODY TO APPELLEE, WHO HAD BEEN CONVICTED OF A CRIME AGAINST A HOUSEHOLD MEMBER RESULTING IN PHYSICAL HARM, AND DID NOT GIVE APPROPRIATE WEIGHT TO THE RELATED STATUTORY FACTOR."

{¶16} "2. THE COURT OVERRELIED [SIC] UPON THE GUARDIAN'S REPORT, AND THE LACK OF OVERSIGHT OF THE GUARDIAN DEPRIVED APPELLANT OF HER FUNDAMENTAL LIBERTY INTEREST IN THE CUSTODY OF HER CHILD."

{¶17} "3. THE COURT OVEREMPHASIZED THE ISSUE OF WHICH PARENT WAS MORE LIKELY TO HONOR AND FACILITATE VISITAITON [SIC] UNDER §3109.04(F)(1)."

{¶18} "4. THE DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

## STANDARD OF REVIEW

{¶19} A trial court enjoys broad discretion in custody proceedings. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 1997-Ohio-260, 674 N.E.2d 1159, paragraph one of the syllabus. Accordingly, a trial court's decision may not be disturbed unless the trial court has abused its discretion. *Id.*; see, also, *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846.

{¶20} In order to rise to the level of an abuse of discretion, the trial court's decision must be unreasonable, arbitrary or unconscionable, and not merely an error of law or

judgment. *Blakemore v. Blakemore* (1983) 5 Ohio St.3d 217, 450 N.E.2d 1140. Furthermore, a judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578; *Myers v. Garson,* 66 Ohio St.3d 610, 614, 1993-Ohio-9, 614 N.E.2d 742. "The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis, supra,* at 418.

{¶21} As an appellate court reviewing evidence in custody matters, we do not function as fact finders. We neither weigh the evidence nor judge the credibility of witnesses. "Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment." *Dinger v. Dinger*, 5th Dist. Stark No. 2001CA00039, 2001-Ohio-1386, at 1. Because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence. *Davis, supra.*

{¶22} The trial court is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Deferential review in a child custody determination is especially crucial "where there may be much evidence by the parties' demeanor and attitude that does not translate to the record well." *Davis, supra.* We are mindful that the knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record, and the reviewing court

should be guided by the presumption that the trial court's findings were correct. *Miller, supra,* at 74.

## ANALYSIS

## Assignment of Error Number 1

**{¶23}** The appellant submits that the trial court failed to make statutorily required findings of fact regarding the appellee's 2015 plea to assault of the appellant, and did not give appropriate weight to the related statutory factor in the best interest analysis. We disagree.

**{¶24}** R.C. 3109.04 addresses the consideration of past criminal conduct in the allocation of parental rights and responsibilities, and provides in pertinent part:

(C) If the court determines that either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being a neglected child, that either parent previously has been determined to be the perpetrator of the neglectful act that is the basis of an adjudication that a child is a neglected child, or that there is reason to believe that either parent has acted in a manner resulting in a child being a neglected child, the court shall consider that fact against naming that parent the residential parent and against granting a shared parenting decree. When the court allocates parental rights and responsibilities for the care of children or determines whether to grant shared parenting in any proceeding, it shall consider whether either parent or any member of the household of either parent has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a

victim who at the time of the commission of the offense was a member of the family or household that is the subject of the proceeding, has been convicted of or pleaded guilty to any sexually oriented offense or other offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the proceeding and caused physical harm to the victim in the commission of the offense, or has been determined to be the perpetrator of the abusive act that is the basis of an adjudication that a child is an abused child. If the court determines that either parent has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the proceeding, has been convicted of or pleaded guilty to any sexually oriented offense or other offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the proceeding and caused physical harm to the victim in the commission of the offense, or has been determined to be the perpetrator of the abusive act that is the basis of an adjudication that a child is an abused child, it may designate that parent as the residential parent and may issue a shared parenting decree or order only if it determines that it is in the best interest of the child to name that parent the residential parent or to issue a shared parenting decree or order and it makes specific written findings of fact to support its determination.

**{¶25}** The appellee was not charged with an offense that would result in M.G. being adjudicated a neglected or abused child. He was not convicted of, nor did he plead guilty to, domestic violence in violation of R.C. 2919.25, or a sexually oriented offense. The portion of R.C. 3109.04(C) that applies to the appellee, in light of his 2015 guilty plea to assault, is the language regarding an "other offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the proceeding and caused physical harm to the victim in the commission of the offense." Thus, in order to designate the appellee as residential parent the trial court was required to determine that such an allocation was in the best interest of M.G., and was required to make specific written findings of fact to support its determination, both of which the trial court satisfied in its sixty-four (64) page judgment entry.

**{¶26}** With regard to the appellee's 2015 guilty plea to assault, the trial court made the following findings of fact:

266. On November 10, 2014, charges were filed against Defendant-Father in Case No. CRB1402786B. (Plaintiff's Exhibit 5, admitted without objection.) The charges were assault and domestic violence regarding the August 11, 2014 incident, where Plaintiff-Mother alleged that Defendant-Father had punched her in the arm.

267. On April 10 2015, Defendant-Father pled guilty to one charge of assault against Plaintiff-Mother. The domestic violence charge was dismissed. He received a suspended sentence of 180 days, was placed on two years of non-reporting probation, was ordered to participate in an

assessment for counseling and follow the recommendations, and was allowed to have peaceful contact with Plaintiff-Mother.

268.   Defendant's Exhibit 2 (Defendant's Video 1, track 4 on a thumb drive) is video from the plea hearing in the assault case. Plaintiff-Mother agreed with the plea agreement, including dropping of the charge of domestic violence. (Defendant's Exhibit 2, admitted without objection.)

269.   Plaintiff-Mother testified at the criminal hearing that she had "no fear for her personal safety" concerning Defendant-Father and that she "gets along ok with Mike." (Defendant's Exhibit 2, admitted without objection.)

270.   Defendant-Father also gave a statement at the sentencing hearing that he "never hit a woman in his life," and that he pled to assault because he did not want a domestic violence conviction on his record. (Defendant's Exhibit 2.)

271.   The parties lived together with the minor child from 2016 until they broke up on May 25, 2017. (Plaintiff's Exhibit 5, admitted without objection.)

272.   Defendant-Father testified that he signed the Parenting Proceeding Affidavit dated April 11, 2018, and failed to list his conviction for assault. (Plaintiff's Exhibit 7, admitted without objection.)

273.   As of June 6, 2018, Defendant-Father's probation was terminated, and the criminal case was closed. Plaintiff-Mother does not believe that Defendant-Father was assessed for counseling. The psychological evaluation of Defendant-Father, completed by David J. Tennenbaum, Ph.D. as part of this custody proceeding, admitted in evidence as Plaintiff's Exhibit

8, found Defendant-Father to be an "emotionally well-functioning adult personality."

274.  At the custody trial hearings in May 2021, Plaintiff-Mother admitted that she said she felt safe with Defendant-Father. She also admitted that she received no treatment for the assault. She testified that she never gave the police medical information.

275.  Defendant-Father testified in this hearing that an assault did not occur.

276.  Defendant-Father testified that the above assault conviction is the only criminal conviction he has.

**{¶27}** In addition, the trial court made findings in which it determined that it was in M.G.'s best interest to designate the appellee as her residential parent:

361.  When asked how Plaintiff-Mother could fulfill her goals, Amy Armstrong, Parenting Coordinator, testified that Plaintiff-Mother must develop coping skills to share parenting time with Defendant-Father including not making disparaging remarks about Defendant-Father. She further testified that Plaintiff-Mother would not cooperate and suggested to the Parenting Coordinator that she "does not know what she went through."

362.  Plaintiff-Mother testified that she heard the conditions requested by the Parenting Coordinator. She testified that she would give the minor child permission to love her dad, Defendant-Father. She testified that she has regrets. She testified that it is accurate to say the minor child does well in Defendant-Father's care, but Plaintiff-Mother states that the minor child

does better in her (Plaintiff-Mother's) care. Despite this testimony of Plaintiff-Mother presented at trial, throughout the duration of this litigation, from April 18, 2018 through November 22, 2021, the final day of trial, Plaintiff-Mother's actions have not met those statements.

363. Plaintiff-Mother testified that she does not really understand what a "functional co-parenting relationship" is.

364. The Magistrate appointed a Parenting Coordinator to facilitate Plaintiff-Mother's parenting time with the minor child. The Parenting Coordinator testified that Plaintiff-Mother did not meet her goals. Defendant-Father, the Guardian ad Litem and the Parenting Coordinator testified that Plaintiff-Mother has specifically not been able to give the minor child permission to love and enjoy her dad; the acknowledge that the minor child is doing well in Defendant-Father's care; to acknowledge that it would hurt the minor child to undermine the relationship with Defendant-Father, and to show a general interest in the minor child's day-to-day life.

365. It is in the best interest of the minor child that Defendant-Father, [M.F.], be named her residential parent and legal custodian. Defendant-Father has attempted to engage Plaintiff-Mother in the minor child's life. The reverse is not true. Plaintiff-Mother fought to keep Defendant-Father out of the minor child's life, regardless of what is good for the minor child. The minor child suffered mental and emotional stress because of Plaintiff-Mother's actions. Plaintiff-Mother had many opportunities to work with

Defendant-Father, through the Guardian ad Litem and the Parenting Coordinator, for parenting time and she was unable or unwilling to do so.

366.   The Defendant-Father can meet the minor child's physical, mental, and emotional needs. He has been her sole parent since February 2020.

* * *

375.   The crux of this case is Plaintiff-Mother's unwillingness to acknowledge that the minor child should have a relationship with Defendant-Father. According to the testimony referenced above, Plaintiff-Mother has endangered the minor child's mental health and emotional health with her efforts to keep Defendant-Father and the minor child apart.

376.   Plaintiff-Mother has not taken advantage of opportunities to reconnect with the minor child during in-person supervised parenting time at Care-Fit while this action has been pending. Further, Defendant-Father offered to provide a supervisor at his home and offered that he would not be present when Plaintiff-Mother is there.

377.   Plaintiff-Mother does not participate in FaceTime calls on Mondays, other than to watch [K.G.] and the minor child interact and to say hello and "I love you."

378.   Defendant-Father testified that Care-Fit had available an appointment on Wednesdays from 6:00 p.m. until 7:00 p.m. for Plaintiff-Mother to visit with the minor child in person as of the last date of the hearing, November 22, 2021, Plaintiff-Mother had chosen not to have in-person supervised visits in person with the minor child.

379.   On November 22, 2021, Defendant-Father testified that Plaintiff-Mother has not undertaken any initiatives to his knowledge to meet the conditions of the Parenting Coordinator to begin unsupervised parenting time since May 2021.

380.   The parties are using Our Family Wizard for communication. Defendant-Father testified in November 2021 that they have communicated three or four times since May 2021.

381.   Plaintiff-Mother testified that she cannot deal with Defendant-Father because of abuse.

382.   At one point, Plaintiff-Mother participated in counseling that was supposed to help her move forward in learning to parent with Defendant-Father. It is unclear whether she is still engaged in counseling.

383.   Plaintiff-Mother's behavior in limiting contact between the minor child and Defendant-Father, telling the minor child that Defendant-Father hit them, or telling the minor child that Defendant-Father is not her father anymore has put the child at risk of anxiety, confusion, and mental distress. Such behavior is not in the best interest of the minor child.

384.   In addition, Plaintiff-Mother has not used the parenting time available to her. She does not wish to travel to Marion to see the minor child once a week, even though she only works on Friday and Saturday nights and has no children at home. She takes only a small part in FaceTime calls with the minor child, really only observes while her daughter [K.G.] interacts with the

minor child. She rejected an opportunity to give the minor child a Christmas gift wherein she would have had no contact with the Defendant-Father.

385.    It is difficult to find a path forward under these circumstances unless Plaintiff-Mother chooses to do the work necessary to reestablish her relations with the minor child.

386.    Defendant Father has shown that he is able to provide a stable home for the minor child and to recognize what is in her best interest.

387.    Supervised parenting time for Plaintiff-Mother is in the best interest of the minor child at this time.

**{¶28}** We find that the trial court made the necessary statutory findings regarding the appellee's criminal conduct, as well as what was in M.G.'s best interest, in rendering its decision. The trial court did not abuse its discretion, and the appellant's assignment of error number 1 is overruled.

### Assignments of Error Numbers 2 & 3

**{¶29}** Assignment of error numbers 2 and 3 both deal with evaluating the factors the trial court must consider in determining what is M.G.'s best interest, and as such we will address them together.

**{¶30}** The appellant submits in her second assignment of error that the trial court "overrelied" on the GAL report and that a lack of GAL oversight deprived her of a fundamental liberty interest. She submits in her third assignment of error that the trial court overemphasized the issue of which party would be more likely to honor and facilitate visitation. We disagree.

{¶31} The GAL was appointed by the Magistrate on July 22, 2018 pursuant to R.C. 3109.04(B)(2)(a) and Civ.R. 75(B)(2) following the June 25, 2018 hearing and the parties' request for a GAL. On August 7, 2018 the GAL moved for an order that both parties submit to drug testing. In addition, she reviewed the pleadings and discussed the matter with the parties' respective counsel, as well as the parties, and conducted an inspection of the appellee's home to determine whether it was appropriate for unsupervised parenting time.

{¶32} The appellant was opposed to unsupervised parenting time, and on August 20, 2018 filed a motion to remove and replace the GAL, alleging bias. The GAL filed a brief contra on October 9, 2018 to which she attached emails documenting her communications with the parties' counsel, and her statement for services which outlined her work on matter. The GAL submitted that, based upon her communications with the parties and their counsel, it was her understanding that the parties had entered into an agreed entry with regard to temporary orders, including visitation as set forth therein, that the appellant's main concerns were the safety of appellee's home and his criminal history, and that because counsel for the parties were unable to reach an agreement on that issue they asked her to "weigh in." The appellee also filed a brief in response to the appellee's motion to remove the GAL. The Magistrate undertook a non-oral consideration of the issue and denied the motion to remove and replace the GAL.

{¶33} Thus, the trial court did engage in oversight of the GAL, and considered the appellant's arguments regarding the efficacy of the GAL's work on the matter. Ultimately, the trial court ruled that the GAL was acting reasonably in the exercise of her duties as

GAL. The appellant's disagreement with the conclusions of the GAL is not a sufficient basis upon which to remove her, nor does it provide the basis for reversal.

**{¶34}** Furthermore, R.C. 3109.04(F) states that the trial court consider all relevant factors when determining what is in a child's best interest, and provides:

(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a)      The wishes of the child's parents regarding the child's care;

(b)      If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c)      The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d)      The child's adjustment to the child's home, school, and community;

(e)      The mental and physical health of all persons involved in the situation;

(f)      The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g)      Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h)      Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

(2) In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:

(k) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(l) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(m) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(n) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(o) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

(3) When allocating parental rights and responsibilities for the care of children, the court shall not give preference to a parent because of that parent's financial status or condition.

**{¶35}** As set forth above, the trial court spent four days in trial on this matter during which it heard the testimony of twelve witnesses in addition to the GAL, one of which was the court-appointed parenting coordinator, and admitted over fifty exhibits. The trial court was in the best position to ascertain the veracity of the witnesses and make a determination regarding the facts of this case, and spent sixty-four pages discussing how the best interest factors listed in R.C. 3109.04(F) applied to those facts. The trial court did not disproportionately consider the GAL report, but rather, considered evidence as to all the requisite factors. There was testimony from the parties, as well as their respective family members and other witnesses. There was also testimony from a law enforcement official, a representative of child protective services, a counselor, and a parenting coordinator. The trial court did not abuse its discretion in its best interest analysis. Accordingly, the appellant's assignments of error numbers 2 and 3 are overruled.

## Assignment of Error No. 4

**{¶36}** The appellant submits in her fourth assignment of error that the trial court's decision was against the weight of the evidence. We disagree.

Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*"

(Emphasis sic.) *Id.* at 387, 678 N.E.2d 541, quoting *Black's* at 1594.

*Eastley v. Volkman*, 132 Ohio St. 3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12 (citing *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), paragraph two of the syllabus.)

**{¶37}** The appellant argues that the trial court acted unreasonably, arbitrarily, and unconscionably, and its decision was therefore against the weight of the evidence because the appellant had been M.G.'s "primary and sole caretaker her entire life," M.G. was doing well in her care, and "appellee's involvement was sporadic at best and only when it met appellee's convenience;" the appellee "was shown to be an abusive, manipulative, individual who the trial court found not be not credible;" and, the appellant "was shown to have been upset in situations which it was not unusual for her to be upset. However, there had been substantial compliance with the visitation laid out by the Court."

**{¶38}** The record belies the appellant's claims. First, the evidence establishes that, at least for some period of time after M.G.'s birth, the parties lived together. In addition, M.G. had been in the appellee's custody since February 26, 2020.  Finally, evidence was presented that the appellant endangered M.G.'s mental and emotional health with her efforts to keep the appellee and M.G. apart by telling M.G. that the appellee hit them and that he was not her father anymore, which put the child at risk of anxiety, confusion, and mental distress.

**{¶39}** Second, the appellant has not cited to where in the record the trial court specifically found the appellee to be not credible. Regardless, the trial court was in the best position to ascertain the veracity of the numerous witnesses who provided testimony in this matter and to render its decision based upon the evidence presented.

**{¶40}** Third, the appellant's assertion that "there had been substantial compliance with the visitation laid out by the Court" is wholly inaccurate in light of the fact that she denied the appellee's parenting time on thirty-four (34) occasions.

**{¶41}** The father in *Blessing v. Blessing,* 12th Dist. Clermont No. CA2019-01-011, 2019-Ohio-3951*,* appealed the trial court's decision to modify a shared parenting plan and designate the child's mother as the residential parent and legal custodian, alleging inter alia that the decision was against the weight of the evidence. While *Blessing* addressed a change in the allocation of parental rights as opposed to an initial allocation as this case, its analysis of the weight of the evidence issue is nonetheless instructive:

> . . . A manifest weight of the evidence challenge concerns " 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.' " (Emphasis omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12, 972 N.E.2d 517, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "In reviewing the manifest weight of the evidence, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Brown v. Brown*, 12th Dist. Clermont No. CA2018-08-064, 2019-Ohio-2164, ¶ 30, citing *Eastley* at ¶ 20. "[R]eversing a judgment on manifest weight grounds should only be done in exceptional circumstances, when the evidence weighs heavily against the judgment." *Jones v. Wall*, 12th Dist. Warren No.

CA2015-10-088, 2016-Ohio-2780, ¶ 14, citing *In re G.S.*, 10th Dist. Franklin

No. 05AP-1321, 2006-Ohio-2530, ¶ 4.

*Id.* at 14.

**{¶42}** The trial court heard from over a dozen witnesses, and reviewed over fifty exhibits. It prepared a detailed analysis of the facts and the requisite statutory factors in rendering its decision regarding the allocation of parental rights and responsibilities in this case.

**{¶43}** The case sub judice "is not one of those exceptional cases where the domestic relations court clearly lost its way so as to create a manifest miscarriage of justice." *Id.* at 19. The trial court's finding that it was in M.G.'s best interest to designate the appellee as her residential parent and legal custodian was not an abuse of discretion, nor was it against the manifest weight of the evidence. Accordingly, appellant's assignment of error number 4 is overruled.

**CONCLUSION**

{¶44} Based upon the foregoing, the appellant's assignments of error are overruled, and the decision of the Fairfield Court of Common Pleas, Division of Domestic Relations is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Delaney, J. concur.